United States District Court
Southern District of Texas
**ENTERED**
March 09, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MONIQUE MASON-KELLY, §
§
*Plaintiff,* §
§
VS. §   CIVIL ACTION NO. 4:23-CV-03185
§
HOUSTON INDEPENDENT SCHOOL §
DISTRICT, *et al.,* §
§
*Defendants.* §

## ORDER

Pending before this Court is Defendant Houston Independent School District's ("Defendant" or "HISD") Motion for Summary Judgment (Doc. No. 38) and Motion to Strike Plaintiff's Response to Defendant's Renewed Motion for Summary Judgment (Doc. No. 40). Plaintiff Monique Mason-Kelly ("Plaintiff" or "Mason-Kelly") filed responses to each of the pending motions. (Doc. Nos. 39, 41). Upon close review of the filings, admissible summary judgment evidence, and the relevant legal standards, this Court hereby grants HISD's Motion for Summary Judgment and dismisses this case.

### I.    Factual Background

This case arises from alleged acts of discrimination and retaliation against a middle school teacher in the Houston Independent School District. Mason-Kelly began teaching at Welch Middle School ("Welch") in 2020. (Doc. No. 38-2 at 29). During her second year of teaching (in the Fall of 2021), Mason-Kelly's students allegedly informed her that another teacher was using racial slurs. (Doc. No. 3 at 6). She alleges that she brought this behavior to the attention of the Welch Principal and filed an official grievance with HISD for discrimination and retaliation. (*Id.* at 8).

As a result of her report, Mason-Kelly alleges that "she was subjected to more frequent and irregularly cumbersome evaluations," "removed from various tutoring lists," and "given a retaliatory caseload." (*Id.* at 9). The Court notes that Mason-Kelly did not point this Court to any summary judgment evidence (or, for that matter, provide any summary judgment evidence at all) that substantiates these allegations.

Though Mason-Kelly did not provide any evidence of a formal diagnosis, she also alleges that she suffers from anxiety, PTSD, and "severe arthritis" in both of her knees. (Doc. No. 3 at 18–19). After the alleged events related to the apparent use of racial slurs in the classroom, Mason-Kelly took a leave of absence (approved by HISD) for the alleged emotional distress caused by this situation. (*Id.* at 9). Mason-Kelly was on leave from March 12, 2022 to April 25, 2022. (Doc. No. 38-2 at 89). As she prepared to return to work, Mason-Kelly provided HISD with paperwork from her doctor stating that she was cleared to return to teaching on May 3, 2022, so long as she had "access to elevators due to arthritis in both knees" and could "sit[] down as needed throughout the workday." (*Id.*). HISD approved the accommodation requests, and Mason-Kelly was given access to the elevators and a chair in her classroom. (*Id.* at 16).

On August 6, 2022 (the Saturday before the start of what would have been her third year of teaching at Welch), Mason-Kelly emailed the Welch Principal Deshonta Everett ("Principal Everett") about her concerns related to her assigned teaching duties for the upcoming school year. (*Id.* at 92). Mason-Kelly stated:

> My main concern is that fair and unbiased treatment is applied when assigning my job assignment. Therefore, I am seeking additional information to understand my potential job assignment. I experienced unnecessary stress last year and want to ensure the same type of measures will not occur this year. The only way I can assess my situation at Welch MS at this time is to ask questions related to my concerns.

(*Id.*). In response, Principal Everett stated that "[t]eaching assignments are based on the needs to the campus and areas of certification. . . . With the national teacher shortage crisis, we are doing the best we can do related to teaching assignments." (*Id.* at 91). After receiving this email, Mason-Kelly did not report to the teacher training at start of the school year. (*Id.*). A few days later, she emailed Principal Everett to inform the faculty that she submitted a Family Medical Leave Act ("FMLA") request for another leave of absence due to her medical conditions. (*Id.* at 94). Her request was approved. (*Id.* at 99).

According to this paperwork, Mason-Kelly was approved to return to work on September 11, 2022. (*Id.* at 102). Her doctor stated that in order to return to work, Mason-Kelly "needs access to elevators, including elevator key" and "access to [a] chair." (*Id.*). These requests were identical to those she submitted during her first leave of absence earlier that year. (*Id.* at 89). In addition to the documentation from her doctor, Mason-Kelly submitted two "ADA Accommodation Request Forms" to HISD on September 20, 2022. (*Id.* at 103). The first Form stated that:

> I have [*sic*] diagnosed with Post Traumatic Stress Disorder (PTSD), which increases my emotional distress and anxiety. This is due to me experiencing continuous retaliatory actions and intense workplace bullying, since filing grievances with Houston Independent School District (HISD), and reporting multiple protected activities of discriminatory race and retaliatory actions to Equal Employment Opportunity Commission (EEOC).

> The accommodations I need to perform essential functions of my job, my physician recommends a job reassignment that is mutually agreed upon to reduce my PTSD, anxiety, and emotional distress symptoms.

(*Id.*). Her second Form stated:

> I was diagnosed with arthritis in both knees on Mary 3, 2021. Therefore, I need access to elevators and/or an elevator key instead of climbing stairs due to the pain, stiffness, and swelling that occurs when my condition is aggravated by certain movements, such as climbing stairs. In addition, when inflammation occurs I need to have access to a chair to sit down as need to relieve the pain in my knees.

> The accommodations I need to perform the essential functions of my job is access to elevators and/or elevator keys, and a chair to sit in as needed when inflammation occurs in my knees due to arthritis.

(*Id.* at 104). That same day, Mason-Kelly returned to work, and she signed a "Key Control Release Form" that enabled her to have keys to the elevator. (Doc. No. 38-4 at 7). Mason-Kelly testified that she also had access to a chair in her classroom. (Doc. No. 38-2 at 22).

Mason-Kelly reported to work from September 20, 2022 to September 28, 2022. (*Id.* at 19). On September 28, 2022, however, Mason-Kelly emailed Principal Everett and other Welch faculty that she would "not be in tomorrow, due to consistent bullying and retaliatory actions by you, Deshonta Everett." (*Id.* at 105). She stated that she would "obtain advice from the HFT and the district on how to proceed with this urgent matter." (*Id.*). On October 1, 2022, Mason-Kelly emailed Welch faculty that she "had to seek medical treatment for emotion distress and anxiety, due to workplace bullying and retaliation [she] suffered" and informed them that she would again be applying for leave. (*Id.* at 107). She informed the faculty that she would be absent from work until November 9, 2022. (*Id.*).

Mason-Kelly never returned to her position at Welch. On November 16, 2022, Principal Everett emailed Mason-Kelly to confirm her employment status. (*Id.* at 120). He stated:

> You have exhausted your personal leave time and you are not eligible for FMLA. You have declined to apply for Leave of Absence with the district. While I did receive a doctor's note you provided, I have not received an update on the status of your return date.
>
> I am directing you to provide me with an update no later than Friday, November 18, 2022 by 12noon [*sic*]. If you do not have an approved leave of absence based on your medical documentation provided to the district, I am directing you to report to work on Monday, November 28, 2022.

4

(*Id.*). Mason-Kelly did not respond to this email, nor did she report to work by the required date. On November 17, 2022, Principal Everett sent a letter by certified mail to her home address. He stated:

> You have failed to report for duty since Wednesday, September 28th, 2022. Pursuant to HISD Board policy DH (Local), you are required to report to your work assignment on time every day and follow attendance procedures. To date, you have failed to consistently follow Welch Middle [S]chool absence-reporting requirements to keep us informed as to your whereabouts and the reason(s) for your absences. Your absences are excessive and your failure to follow established absence notification procedures violates campus and HISD policies and constitutes neglect of your assigned duties.

(*Id.*). The letter also contained several options by which Mason-Kelly could obtain an approved leave of absence, including utilizing personal illness days, filing an FMLA request, applying for unpaid temporary disability leave, exploring disability retirement, or submitting a formal resignation. (*Id.*).

On November 27, 2022, one day before Mason-Kelly was required to report back to her position, Mason-Kelly responded to Principal Everett. (*Id.* at 125). She stated:

> I am responding to the email sent by you on November 16, 2022, at 8:00 pm with an unrealistic timeline for response (prior to Houston Independent School District's Thanksgiving Break). Therefore, I am submitting documentation previously sent to Houston Independent School District, ADA and Leave Administration in this email. The doctor's note has the reason listed for my condition, my diagnosis and other personal information are redacted.
>
> Also, I am again requesting a transfer to another campus due to continuous workplace bullying at Welch Middle School. This transfer is requested due to previous, current, and continuous workplace bullying, including email bullying. For example, I (Monique Mason-Kelly) am the only teacher at Welch Middle School whose personal email address was included in a Welch Middle School all staff email (I did send you an email requesting for you to remove my email address from public domain) when this occurred. You (Welch Principal Deshonta Everett) have consistently added and/or removed me from multiple staff emails.
>
> In addition, I have received various emails from an outside source (called smores email) sent to my personal and/or work email by you (Welch Principal Deshonta

> Everett), which exposes my personal information to an external email source originated outside of the Houston Independent School District.
>
> Therefore, I am requesting for you to please stop bullying me through emails. I would appreciate your assistance with this urgent matter. I have sent my doctor's note as you requested.

(*Id.* at 125). Mason-Kelly did not report to work on the required date, nor did she take any further action to have her leave of absence approved by HISD.

On November 30, 2022, Principal Everett sent Mason-Kelly another letter by certified mail. (*Id.* at 126). The letter stated that "[a]s of the date of this letter, you have been absent from duty for 37 days." (*Id.*). The letter outlined the options that Mason-Kelly could utilize to seek approval for her leave, but otherwise, Principal Everett directed her to return to work by December 5, 2022. (*Id.*). When Mason-Kelly did not report to work on December 5, 2022, Principal Everett directed her to return to work by December 7, 2022. (*Id.* at 129). Mason-Kelly did not report to work on that date either, nor did she take any further action to have her leave of absence approved by HISD.

On December 14, 2022, HISD's Leave Administration emailed Mason-Kelly. The Administration explained:

> Our records indicate that you are due to return to work today and you have not provided the proper return-to-work notification or documentation. As such, your employment status will be updated to 'Expired FML.' Failure to return to work, or to keep your manager, HR Representative, and the Houston ISD Leave Administration department informed of your return to work may constitute job abandonment and lead to termination of your employment with Houston ISD.

(*Id.* at 132). The Leave Administration also informed her that she could switch her status to "Temporary Disability," an unpaid position. (*Id.*). While Mason-Kelly submitted some notes from her doctor over the course of the Spring of 2023, she never returned to work, and she never received approval for her absences. Throughout that entire 2022–2023 school year, Mason-Kelly only reported for work from September 20, 2022 to September 28, 2022. (*Id.* at 19).

6

While Mason-Kelly was still not reporting to work (but was still under contract with HISD), (*id.* at 74), she began to apply for teaching positions in other school districts. In February 2023, Mason-Kelly applied for a Middle School Language Arts Specialist position in Alief Independent School District. (*Id.* at 55). On May 25, 2023, Mason-Kelly formally accepted that position for the following school year. (*Id.* at 68).

On April 14, 2023, after nearly six months of unapproved absences, the Superintendent of HISD sent a letter via certified mail to Mason-Kelly to inform her that a proposal to "nonrenew" her contract was pending before the Board. (*Id.* at 76). On April 27, 2023, Mason-Kelly informed HISD that she would be appealing the HISD's intent to terminate her employment. (*Id.* at 78). On June 29, 2023, about one month after Mason-Kelly accepted another position with the Alief Independent School District, Mason-Kelly withdrew her appeal and dropped her claim before the Commissioner of Education. (*Id.* at 81–82).

On August 29, 2023, Mason-Kelly filed this lawsuit against HISD, Rosa Hernandez, Alvin Goldman, and Deshonta Everett for discrimination and retaliation on the basis of her race, national origin, color, and disability under Title VII of the Civil Rights Act of 1964, the Texas Commission on Human Rights Act, and the Americans with Disabilities Act of 1990. This Court previously dismissed the claims against Alvin Goldman and Deshonta Everett. (Doc. No. 25). Mason-Kelly has not filed any proof of service for the remaining individual defendant, Rosa Hernandez, and Hernandez has not appeared in this lawsuit. HISD filed a Motion for Summary Judgment (Doc. No. 38) on each of the claims against it. The Court considers the Motion below.

## II.   Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III.    Analysis

Mason-Kelly brought discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Texas Commission on Human Rights Act ("TCHRA") for racial discrimination and retaliation and discrimination and retaliation claims under the Americans with Disabilities Act ("ADA") against HISD. *See* (Doc. No. 25) (dismissing all remaining claims against HISD). Additionally, Mason-Kelly has a claim against Defendant Rosa Hernandez ("Hernandez"), as "she has neither answered nor otherwise appeared in this case." (*Id.*). The Court

8

addresses each of the three causes of action, as well as any claims against Hernandez. The Court **GRANTS** the Motion for Summary Judgment (Doc. No. 38) and dismisses this case.

## A. Title VII and TCHRA Claims

Mason-Kelly brought a cause of action under Title VII and the TCHRA under two different theories of liability: racial discrimination and retaliation. The TCHRA is "effectively identical to Title VII." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012). The Supreme Court of Texas as "consistently held" that cases interpreting Title VII should guide courts' interpretation of the TCHRA. *Id.* Texas courts follow the United States Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases. *Id.* "The first method, rather straightforward, involves proving discriminatory intent via direct evidence of what the defendant did and said." *Id.* When a claim involves circumstantial evidence, however, Texas courts utilize the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In *McDonnell Douglas*, the Supreme Court outlined a three-part framework to analyze a discrimination claim. First, the plaintiff must establish a prima facie case of discrimination. *Id.* If the plaintiff does so, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the employer provides a legitimate, nondiscriminatory reason for the employee's rejection, the burden shifts back to the plaintiff to prove that the employer's reason was pretext for discrimination. *Id.* at 804–05.

### 1. Racial Discrimination

The Court first addresses Mason-Kelly's claim for racial discrimination under Title VII and the TCHRA. Under the TCHRA, "an employee commits an unlawful employment practice if because of race . . . the employer . . . fails or refuses to hire an individual, discharges an individual,

or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]" Tex. Labor Code § 21.051. To establish a prima facie case of racial discrimination under the TCHRA, "the plaintiff must establish that [she] (1) was a member of the protected class . . ., (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone [outside the protected class] or (b) otherwise treated less favorably than others who were similarly situated by outside the protected class." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315 (5th Cir. 2021) (citing *Tex. Tech. Univ. Health Sci. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 205 (Tex. 2020)). The "similarly situated" prong requires a plaintiff to show that she "was treated less favorably than other 'under nearly identical circumstances.'" *Morris v. Town of Indep.*, 827 F.3d 396, 401 (5th Cir. 2016). As a result, the practical effect is that "comparators must share the same job or responsibilities, the same supervisor, the same conduct leading to the adverse decisions, and essentially comparable violation histories." *Ray v. United Parcel Serv.*, 587 Fed. App'x 182, 194 (5th Cir. 2014). If a plaintiff cannot meet their burden in establishing a prima facie case of discrimination, the Court need not reach the subsequent burden-shifting analysis under *McDonnell Douglas*. *Sanders v. Regions Bank*, No. 4:22-CV-1523, 2024 WL 2159961, at *4 (S.D. Tex. May 14, 2024).

HISD argues that Mason-Kelly has failed to establish a prima facie case for racial discrimination because (1) she did not suffer an adverse employment action and (2) she was not treated differently from similarly situated employees. In response, Mason-Kelly argues that she has provided enough circumstantial evidence to establish a prima facie case for discrimination, including that she was constructively discharged and "forced to depart" from her position at Welch Middle School. In actuality, Mason-Kelly has not provided any evidence (circumstantial or

otherwise) and she also fails to point this Court to any summary judgment evidence to support her arguments. *See* (Doc. No. 39).[1] Though Mason-Kelly certainly advocates for her position with sweeping conclusory statements, she failed to provide any citations to the record or even any discussion of the summary judgment evidence provided by HISD.

Additionally, Mason-Kelly fails to identify a single comparator to demonstrate that she was "otherwise treated less favorably than others who were similarly situated by outside the protected class." *Ross*, 993 F.3d at 320. While Mason-Kelly stated in a conclusory fashion that "[n]on-Black, non-disabled employees were allowed to retain accommodations, receive transfers, and keep leadership opportunities" and "by contrast, [she] was denied those benefits despite repeated requests," Mason-Kelly did not name a single person or provide a single piece of evidence to support this allegation. (Doc. No. 39 at 20). The Court notes that while it is not the role of the Court to search the record for evidence that might establish an issue of material fact, *Malacara v. Garber*, 353 F.3d at 405 (5th Cir. 2003), the Court did review all of the summary judgment evidence to find any attempt by Mason-Kelly to identify comparators. It found none. *See generally* (Doc. No. 38). The "failure to identify a comparator is fatal to [her] claim of racial discrimination." *Thornton v. Univ. of Tex. Southwestern Med. Ctr.*, No. 3:22-CV-20179, 2024 WL 2787886, at *2 (N.D. Tex. Mat 29, 2024). Therefore, the Court need not reach the other points of contention briefed by the Parties, and the Court dismisses this claim.

---

[1] The Court also notes that HISD has requested this Court to strike Mason-Kelly's Response for untimeliness and other deviations from the Local Rules. (Doc. No. 40). The Court denies that request and considers the Response (despite the fact that it completely lacks summary judgment evidence) in this Order.

## 2.  Retaliation

Mason-Kelly also alleges that HISD retaliated against her for engaging in a protected activity. The substantive law governing Title VII and TCHRA retaliation claims is identical. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). To establish a prima facie case of retaliation, Mason-Kelly must demonstrate that: (1) she engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action." *Id.* Under the TCHRA, "an employee has engaged in protected activity if she has opposed any practice made an unlawful employment practice under [the TCHRA]." *Id.* (quoting *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)). If a plaintiff cannot meet her burden in establishing a prima facie case of retaliation, the Court need not reach the subsequent burden-shifting analysis under *McDonnell Douglas*. *Sanders*, 2024 WL 2159961, at *4.

HISD argues that Mason-Kelly has failed to establish a prima facie case for retaliation because she cannot establish that she suffered any adverse employment action as a result of her engagement in protected activities. In response, Mason-Kelly argues that she "engaged in multiple protected activities," such as "[r]eporting students' complaints that another teacher used racial slurs," "[f]iling internal grievances concerning retaliation, loss of pay, and removal of accommodations," "[r]equesting accommodations for her arthritis and PTSD," and "[f]iling and later amending an EEOC charge alleging discrimination and retaliation." (Doc. No. 39 at 23). She also argues that as a direct result of engaging in these protected activities, she suffered from several adverse employment actions, such as "[s]tripping of leadership roles and tutoring opportunities," "[d]enial of transfer requests while comparable employees were permitted to transfer," "[p]lacement in overheated and unsafe classrooms," "[r]emoval of handicap parking spaces,"

12

"[m]anipulation of payroll records," "[f]alsification of attendance records," and "[r]ecommendation for nonrenewal of her contract." (*Id.*). The Court reviews the summary judgment evidence to determine whether there is a genuine dispute of material fact that Mason-Kelly suffered an adverse employment action or that there was any causal connection between her engagement in the protected activity and the adverse employment action(s).

First, Mason-Kelly alleges that her participation in protected activities led to HISD "[s]tripping [her] of leadership roles and tutoring opportunities." (*Id.*). Mason-Kelly does not cite to the record to support this claim, but HISD did identify relevant deposition testimony that refutes this argument. While Mason-Kelly testified that she had previously served as a mentor to new teachers and a tutor to students, she also testified that she had never requested to be a tutor or a mentor and did not know who made the decision to place teachers in those roles. (Doc. No. 38-2 at 31). In other words, she testified that she was never expressly denied this opportunity, and she had no knowledge about the decision-making process. (*Id.*). Mason-Kelly did not provide any documentation about the "leadership roles" or "tutoring opportunities" and did not provide any deposition testimony or other evidence that could have created a fact issue as to whether this was an adverse employment action. Without such evidence, the Court cannot use these bare allegations to build her prima facie claim for retaliation.

Second, Mason-Kelly alleges that her transfer requests were denied "while comparable employees were permitted to transfer." (Doc. No. 39 at 23). As discussed above, Mason-Kelly does not identify any "comparable employees" to demonstrate that the denial of her transfer requests was an adverse employment action. Though Mason-Kelly does not provide this Court with any summary judgment evidence, HISD provided a transcript of her deposition testimony. Therein, Mason-Kelly testified that she never actually applied (and thus, was not actually denied

the opportunity) to transfer campuses. *See* (Doc. No. 38-2 at 28). While Mason-Kelly did submit some paperwork from her doctor suggesting a transfer as an accommodation of her alleged disability (discussed in the section below), Mason-Kelly testified that she knew that teachers needed to apply "[w]hen it's open transfer" during the spring semesters. (*Id.*). Mason-Kelly did not utilize the transfer system or formally submit a transfer request. (*Id.*). She did not provide this Court with any evidence to the contrary. Without such evidence, the Court cannot use these bare allegations to build her prima facie claim for retaliation.

Third, Mason-Kelly alleges that she was placed "in overheated and unsafe classrooms." Though Mason-Kelly did not provide any evidence to support this allegation, the Court is in receipt of an email chain that shows that Mason-Kelly reported apparently hot temperatures in her classroom during the single week she reported to work in the 2022–2023 school year. *See* (Doc. No. 38-2 at 138) ("I will complete my lesson plans at home, due to the temperature of room 516 staying at 80 degrees or higher. It is too hot in here to concentrate and was extremely difficult to get tasks completed today."). Nevertheless, the email chain shows that Principal Everett responded within ten minutes to confirm that a work order had been put in. (*Id.*). Mason-Kelly offers no summary judgment evidence to supplement these email chains to demonstrate that this was an adverse employment action, nor does she explain how the A/C malfunction was somehow caused by her participation in a protected activity. Without such evidence, the Court cannot use these bare allegations to build her prima facie claim for retaliation.

Fourth, Mason-Kelly alleges that HISD removed "handicap parking spaces" at Welch. The Court again notes that Mason-Kelly did not provide any summary judgment evidence to support this allegation, but HISD did include evidence on this point, and it shows that several handicap parking spots were available on campus. *See generally* (Doc. No. 38-4). Mason-Kelly offers no

contrary summary judgment evidence to this photographic evidence, nor does she explain how the alleged removal was somehow caused by her participation in a protected activity. Without such evidence, the Court cannot use these bare allegations to build her prima facie claim for retaliation.

Fifth, Mason-Kelly alleges that HISD manipulated her payroll records and falsified attendance records. At the risk of sounding like a broken record, the Court reiterates that Mason-Kelly has offered absolutely no summary judgment evidence to support these allegations. Without such evidence, the Court cannot use these bare allegations to build her prima facie claim for retaliation.

Lastly, Mason-Kelly alleges that the recommendation for "nonrenewal" of her employment agreement was an adverse employment action caused by her engagement in protected activities. HISD does not dispute that Mason-Kelly was recommended for nonrenewal. *See* (Doc. No. 38-2 at 76) ("The Board of Education of the Houston Independent School District . . . acted on my recommendation and authorized me to notify you that a proposal to nonrenew your contract . . . is pending before the Board."). Though Mason-Kelly argues that the "circumstantial evidence" shows a causal connection between the proposal of nonrenewal and her participation in protected activities, she offers no reference or incorporation of the supposed "circumstantial evidence" to support her argument. *See generally* (Doc. No. 39). Without such evidence, the Court cannot use these bare allegations as a basis for finding a fact issue.

The bottom line is that Mason-Kelly failed to point this Court to any evidence—whatsoever—that there was a causal link between any alleged adverse employment actions, if any adverse employment actions existed at all, and her participation in the protected activity. The failure to do so is fatal to her retaliation claim. *Bradford v. McCarthy*, 2021 WL 2701606, at *8 (W.D. Tex. May 18, 2021) ("At the prima facie stage, the plaintiff must set forth 'at least some

15

evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of retaliation.'" (quoting *Ackel v. Nat'l Comm's, Inc.*, 339 F.3d 376, 385–86 (5th Cir. 2003)). Therefore, the Court dismisses the claim with prejudice.

### B. ADA Claims

In her First Amended Complaint (Doc. No. 3), Mason-Kelly also brought two causes of action under the ADA. As this Court previously explained, though her Complaint was not the "model of clarity," the Court finds that Mason-Kelly "brought [an] ADA retaliation claim and an ADA discrimination claim." (Doc. No. 25 at 8). The Court addresses both claims below.

### 1. ADA Discrimination

The ADA prohibits an employer from discriminating against a "qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). When there is no direct evidence of disability discrimination, the Court analyzes a disability discrimination claim under the *McDonnell-Douglas* framework as outlined above. *Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 776 (N.D. Tex. 2013). Of course, the first step in the *McDonnell-Douglas* framework is for the plaintiff to establish a prima facie case of disability discrimination. "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that [s]he has a disability, (2) that [s]he was qualified for the job, and (3) that [s]he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

HISD contends that Mason-Kelly was not "qualified for the job" under the ADA. The ADA defines a "qualified individual" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To avoid summary judgment, the plaintiff must show that she was "qualified at the time of [her] termination." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582

(5th Cir. 2020). "The determination of qualification is two-fold: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, skills, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n.14 (5th Cir. 1997). For the second prong, the plaintiff must demonstrate that either (1) she "could 'perform the essential functions of the job in spite of [her] disability,' or, if she could not, (2) that 'a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job.'" *LHC Grp., Inc.*, 773 F.3d at 697.

In this case, HISD does not argue that Mason-Kelly did not have the "necessary prerequisites" to perform her role as a middle school teacher, but it does argue that she was not "qualified" for the position because she was unable (or unwilling) to perform the essential functions of her job—with or without reasonable accommodations. A function is "essential" if it "bear[s] more than a marginal relationship to the job at issue." *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993). "[A]s several courts have recognized, '[a]n essential element of any . . . job is an ability to appear for work[.]" *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996). Specifically, the Fifth Circuit has held that an employee was not "qualified" when she was unable to come to work and had not worked for five months, her FMLA leave was exhausted, and she gave his employer "no indication of when he would again be cleared to return to work." *Amsel v. Tex. Water Dev. Bd.*, 464 Fed. App'x at 395, 399–400 (5th Cir. 2012) (per curiam).

In this case, it is undisputed that at the time that Mason-Kelly was recommended to the School Board for contract nonrenewal, Mason-Kelly had not reported to work for nearly six months. HISD sent several letters (through e-mail and certified mail) to Mason-Kelly, requesting

17

a status updated on her unapproved leave of absence. *See, e.g.*, (Doc. No. 38-2 at 120). These communications contained explanations that her leave of absence was unapproved by the District and that she was ineligible for additional FMLA leave. *See (id.)*. Additionally, HISD reminded Mason-Kelly that was "required to report to [her] work assignment on time every day and follow attendance procedures" in order to satisfy the essential duties of her job. *(Id.)*. HISD also provided Mason-Kelly with alternatives to seek approved leave, including personal illness days or temporary disability leave. *See, e.g. (id.* at 122). Despite these communications, Mason-Kelly never returned to work or communicated any plan to return to work. *(Id.* at 132) ("Our records indicate that you are due to return to work today and you have not provided the proper return-to-work notification or documentation."). While Mason-Kelly did periodically send vague doctor's notes to Principal Everett, those notes never indicated when or how Mason-Kelly would report back to her teaching position. *(Id.* at 110, 136) (only stating that "[p]atient is still out until further notice for medical reasons"). Instead, while she was on an unapproved leave of absence, she applied for and accepted another job in Alief Independent School District in the Spring of 2023. *See, e.g.*, *(id.* at 55).

As the Fifth Circuit has recognized, failing to appear for work fails to meet the "essential elements" of any job—let alone an in-person teaching position at a middle school. *Rogers*, 87 F.3d at 759; *Amsel*, 464 Fed. App'x at 400. Based on the summary judgment evidence offered by HISD (and the complete lack of evidence offered by Mason-Kelly), the Court finds that at the time that Welch recommended Mason-Kelly for contract nonrenewal, she was not qualified for the position.

Nevertheless, the Court must also consider whether an employee would be able to perform the essential functions of her job with a reasonable accommodation. *Amsel*, 464 Fed. App'x at 400. Under the ADA, a "reasonable accommodation" may include "job restructuring, part-time or

18

modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). The Fifth Circuit has held that "[i]ndefinite leave is not a reasonable accommodation." *Amsel*, 464 F. App'x at 400.

In this case, Mason-Kelly did submit several accommodation requests. On September 20, 2022, Mason-Kelly submitted two formal ADA Accommodation Request Forms to HISD. (Doc. No. 38-2 at 103). Mason-Kelly requested "job reassignment," "access to elevators and/or an elevator key," and "access to a chair." (*Id.*). As a preliminary matter, Mason-Kelly testified that she did have access to a chair at work. (*Id.* at 22). Additionally, HISD offered evidence that on the very same day she requested these accommodations, Mason-Kelly signed out a key to the elevators from the HISD Construction and Facility Services. (Doc. No. 38-4 at 7).

As for her request for a job reassignment, Mason-Kelly testified that she understood that in order to request a transfer of schools, she would need to submit a formal application during "open transfer season." (Doc. No. 38-2 at 28). She testified that she never actually applied (and thus, was not actually denied the opportunity) to transfer campuses. *See* (*id.*). Mason-Kelly did not utilize the transfer system or formally submit a transfer request. (*Id.*). She did not provide any evidence to the contrary. Even assuming, *arguendo*, that HISD should have unilaterally taken steps to transfer her to a different campus without a formal application to do so, "[a] request for transfer to avoid personal difficulties in the workplace is not a reasonable accommodation." *Urdy v. Tex. Mut. Ins. Co.*, No. 1:18-CV-1048, 2020 WL 9809988, at *8 (W.D. Tex. July 16, 2020). Moreover, even assuming, *arguendo*, that transfer was a reasonable accommodation in this case, Mason-Kelly has offered no evidence to show that a transfer was at all possible. *See E.E.O.C. v. Chevron Phillips*

*Chem. Co.*, No. H-050337, 2007 WL 9711755, at *11 (S.D. Tex. Jun. 5, 2007), *report and recommendation adopted*, 2007 WL 9711754 (S.D. Tex. July 5, 2007) ("[A] transfer to another position may be considered as a accommodation, however, the plaintiff bears the burden of proving that an available position existed, that she was qualified for that position, and could, with reasonable accommodations, perform those job duties."). Mason-Kelly offered no summary judgment evidence to show other available positions in HISD at the time of her request or that, if she was transferred to a different campus, she would be able to perform the essential duties of the job (like reporting for work). Without such evidence, this Court finds that with or without a reasonable accommodation, Mason-Kelly was not qualified for the position. Therefore, she has failed to establish a prima facie case for disability discrimination, and this Court dismisses the claim.

### 2. ADA Retaliation

"To establish a prima facie case of retaliation under the ADA (as under Title VII), a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse action." The Fifth Circuit uses the same framework to evaluate the prima facie cases of retaliation under the ADA and Title VII. *Sprouse v. Boxer Prop. Mgmt. Corp.*, No. H-16-1739, 2017 WL 3671081, at *2 (S.D. Tex. Aug. 11, 2017).

As discussed at length above, the Court finds that Mason-Kelly did not establish a prima facie case of retaliation because she offered no evidence that there was a causal link between any alleged adverse employment actions and her participation in the protected activity. The failure to do so is fatal to her retaliation claim. *Bradford*, 2021 WL 2701606, at *8 ("At the prima facie stage, the plaintiff must set forth 'at least some evidence of a causal link between the protected

20

activity and the adverse employment action to establish a prima facie case of retaliation.'" (quoting *Ackel*, 339 F.3d at 385–86). Therefore, the Court dismisses the claim with prejudice.

### 3. The Remaining Claims Against Rosa Hernandez

Lastly, the Court must address the pending claims against Defendant Rosa Hernandez, in her individual and official capacities. While this Court dismissed the claims against the other individuals named in the First Amended Complaint (Alvin Goldman and Deshonta Everett), this Court could not dismiss the claims against Rosa Hernandez because she had not yet answered or otherwise appeared in the litigation. (Doc. No. 25). There is no evidence that Rosa Hernandez was ever served with this lawsuit. While Mason-Kelly requested the issuance of summons in October 2023, *see* (Doc. Nos. 4, 5), there is no evidence that any summons was served and returned in compliance with Federal Rule of Civil Procedure 4(m). Under the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). This lawsuit was filed in state court on August 21, 2023, and it was removed to this Court on August 29, 2023. (Doc. No. 1). Plaintiff has had well over two years to effectuate proper service on Hernandez in accordance with the Federal and Texas Rules of Civil Procedure. Therefore, the Court dismisses the claims against Hernandez without prejudice.

### IV. Conclusion

For the foregoing reasons, the Court hereby grants HISD's Motion for Summary Judgment on each of Mason-Kelly's causes of action. Further, all claims against Rosa Hernandez are dismissed without prejudice. All other pending motions are denied as moot. The Court dismisses

this civil action as to HISD with prejudice and as to Rosa Hernandez without prejudice and will

enter a separate judgment compliant with Federal Rule of Civil Procedure 58(a).

It is so ordered.

Signed on this the _9th_ day of March 2026.

Andrew S. Hanen
United States District Judge